UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| **PATRICK JOSEPH MONAHAN, JR.,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>)<br>**SOCIAL SECURITY** )<br>**ADMINISTRATION,** )<br>)<br>**Defendant.** ) | **No. 2:18-cv-00026**<br>**Chief Judge Crenshaw**<br>**Magistrate Judge Brown** |

To: The Honorable Waverly D. Crenshaw, Jr., Chief United States District Judge

## REPORT AND RECOMMENDATION

Pending before the court is Plaintiff's motion for judgment on the administrative record (Docket Entry No. 11), to which Defendant Commissioner of Social Security ("Commissioner") filed a response (Docket Entry No. 13). Upon consideration of the parties' filings and the transcript of the administrative record (Docket Entry No. 7)[1] and for the reasons given herein, the Magistrate Judge **RECOMMENDS** that Plaintiff's motion for judgment be **DENIED** and that the decision of the Commissioner be **AFFIRMED**.

### I. PROCEDURAL HISTORY

Plaintiff, Patrick Joseph Monahan, Jr., filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act on June 12, 2014, alleging disability onset as of June 16, 2011, due to PTSD, depression, anxiety and back problems. (Tr. 33, 79, 92, 243). Plaintiff's claim was denied at the initial level on July 31, 2014, and on reconsideration on September 24, 2014. (Tr. 33, 90, 104, 109, 114). Plaintiff subsequently requested *de novo* review

---

[1]Referenced hereinafter by page number(s) following the abbreviation "Tr."

of his case by an administrative law judge ("ALJ"). (Tr. 33, 119). The ALJ heard the case on August 17, 2016, when Plaintiff appeared with counsel and gave testimony. (Tr. 33, 49-78). Testimony was also received by a vocational expert. (Tr. 73-77). At the conclusion of the hearing, the matter was taken under advisement until October 3, 2016, when the ALJ issued a written decision finding Plaintiff not disabled. (Tr. 33-44). That decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2. The claimant has not engaged in substantial gainful activity since June 16, 2011, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: post-traumatic stress disorder (PTSD); major depressive disorder; spine disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can lift and carry, push and pull up to 20 pounds occasionally, and up to 10 pounds frequently. With normal breaks in an eight-hour day, he can sit for six hours, and stand and/or walk for six hours. The claimant can understand and carry out simple and detailed instructions; can maintain concentration, persistence and pace for simple and detailed, but not executive level tasks, despite infrequent distractions in a social setting; can tolerate only one-on-one interaction with the general public and occasional interaction with supervisors and co-workers; and can adapt to occasional changes in the workplace.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on March 26, 1989 and was 22 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 16, 2011, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 35, 36, 38, 42, 43).

On January 24, 2018, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-5), thereby rendering that decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. REVIEW OF THE RECORD

The following summary of the medical record is taken from the ALJ's decision:

The claimant's medical records show a history of PTSD, with one inpatient hospital stay, discussed below. The record also notes back complaints, with conservative treatment, indicated below.

The claimant's mental impairments, while causing limitations, are not supported by the record as totally disabling. The claimant reported a history of military services and resulting PTSD. The records note a hospitalization as a result of a PTSD "attack" in which he was deemed a danger to himself and others (Exhibit 7F/4, 6). However, the record as a whole notes that his symptoms are managed with medication (Exhibit 2F/15; 3F/5). Furthermore, while the claimant reported a

decreased ability to interact in social settings, he maintains the ability to attend to his daily needs without significant assistance from others, as noted above in discussing his "Paragraph B" limitations. As noted above, the claimant does not have marked limitations in any domain. In May 2013, the claimant reported anxiety, difficulty, with crowds, and feeling lonely (Exhibit 3F/30). However, the claimant admitted that he was not taking his medication regularly (3F/30, 31). Furthermore, the claimant's mental status examinations did not note abnormal traits (Exhibit 2F/21, 34; 3F/28).

While the claimant was admitted to the hospital in June 2014, he improved with treatment (Exhibit 4F/ 131, 141; 7F). His admitting global assessment of functioning ("GAF") score was 30, which represents the clinician's subjective evaluation at that particular time, and indicative of a major impairment in functioning (Exhibit 7F/5 ). On discharge, however, the claimant had a GAF score of 60, indicating a low level of moderate symptoms (Exhibit 7F/20). The claimant was also under the influence of alcohol, which could reasonably decrease his functioning (Exhibit 7F/19). The evidence as a whole does not support disabling symptoms.

Similarly, the claimant alleges back pain, but the claimant's physical abilities do not show that it totally precludes him from competitive work on a sustained basis. An MRI prior to the alleged onset date showed right foraminal disc protrusion (Exhibit l F/8). In June 2013,the claimant reported that he was not going to the gym like he once did, but due to lack of motivation, and not due to back pain (Exhibit 3F/28). In July 2013, the claimant continued to complain of back pain (Exhibit 2F/26). However, the claimant had a steady gait (Exhibit 2F/10). In June 2014, the claimant reported throwing lumber around the yard in spite of complaints of chronic back pain (Exhibit 4F/131). The claimant also maintained the ability to perform household chores, repairs, and fix meals, as noted above, all of which require some degree of back support. His treatment was conservative and there was no indication that he was a surgical candidate (Exhibit 2F/20, 21). The evidence does not support a finding of total disability.

(Tr. 38-39).

## III.  CONCLUSIONS OF LAW

### A.  Standard of Review

Review of the Commissioner's disability decision is narrowly limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the right legal standards in reaching the decision. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir.

2014) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)). "Substantial evidence requires 'more than a mere scintilla' but less than a preponderance; substantial evidence is such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). In determining whether substantial evidence supports the Commissioner's findings, a court must examine the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387 (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton*, 246 F.3d at 773 (citations omitted). However, where an ALJ fails to follow agency rules and regulations, the decision lacks the support of substantial evidence, "even where the conclusion of the ALJ may be justified based upon the record." *Miller,* 811 F.3d at 833 (citation and internal quotation marks omitted).

### B. Administrative Proceedings

The claimant has the ultimate burden of establishing his entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically

5

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) ("[T]he claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). The Commissioner applies a five-step inquiry to determine whether an individual is disabled within the meaning of the Social Security Act, as described by the Sixth Circuit as follows:

> (1) a claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings; (2) a claimant who does not have a severe impairment will not be found to be disabled; (3) a finding of disability will be made without consideration of vocational factors if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four; (4) a claimant who can perform work that he has done in the past will not be found to be disabled; and (5) if a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

*Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (citing *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007)); 20 C.F.R. § 404.1520. The claimant bears the burden through step four of proving the existence and severity of the limitations his impairments cause and the fact that he cannot perform past relevant work; however, at step five, "'the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity . . . .'" *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 628

6

(6th Cir. 2016) (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal quotation marks omitted)).

The Social Security Administration can carry its burden at the fifth step of the evaluation process by relying on the Medical-Vocational Guidelines, otherwise known as "the grids," but only if a nonexertional impairment does not significantly limit the claimant, and then only when the claimant's characteristics precisely match the characteristics of the applicable grid rule. *See Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010); *Wright v. Massanari*, 321 F.3d 611, 615-16 (6th Cir. 2003). The grids otherwise only function as a guide to the disability determination. *Wright*, 321 F.3d at 615-16; *see also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990). Where the grids do not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, typically through vocational expert ("VE") testimony. *Anderson*, 406 F. App'x at 35; *see Wright*, 321 F.3d at 616 (citing SSR 83-12, 1983 WL 31253, *4 (Jan. 1, 1983)).

When determining a claimant's residual functional capacity ("RFC") at steps four and five, the Commissioner must consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B), (5)(B); *Glenn v. Comm'r of Soc. Sec.*, 763 F.3d 494, 499 (6th Cir. 2014) (citing 20 C.F.R. § 404.1545(e)).

### C. Claims of Error

#### 1. The ALJ failed to consider the VA finding of disability.

Plaintiff argues that in giving the disability determination by the Department of Veterans Affairs ("VA") little weight the ALJ improperly relied on the second VA rating decision and did not

7

consider the earlier VA rating decision that found that Plaintiff had a 100% service connected disability from PTSD. (Docket Entry No. 12, at 14). Plaintiff asserts that the second VA rating decision did not disturb the original VA rating decision regarding Plaintiff's PTSD. *Id*. at 15. In response, Defendant contends that the ALJ properly discussed the VA disability rating and sufficiently analyzed the VA's July 2015 disability rating that incorporated the VA's earlier January 2013 disability rating. (Docket Entry No. 13, at 4-5).

The Sixth Circuit has stated that an ALJ is "not bound to accept the disability rating made by the Veterans Administration." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 510 (6th Cir. 2013). Title 20 C.F.R. § 404.1504 provides:

> A decision by any . . . other governmental agency about whether you are disabled . . . is based upon its rules and is not our decision about whether you are disabled . . . . We must make a disability . . . determination based on social security law. Therefore, a determination made by another agency that you are disabled . . . is not binding on us.

*Id.*[2] However, "a disability rating from the Veterans Administration is entitled to consideration." *Ritchie*, 540 F. App'x at 510; SSR 06-03p, 2006 WL 2329939, at *6 (S.S.A. Aug. 9, 2006) ("[E]vidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered."). The Sixth Circuit has not "specified the weight such a determination should carry when determining social security disability eligibility." *Ritchie*, 540 F. App'x at 510; *see also LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 387 (6th Cir. 2013) ("This court has not set forth a specific standard regarding the weight the Commissioner should

---

[2]Effective March 27, 2017, this section was amended. However, because Plaintiff filed his application for disability benefits with the Social Security Administration on June 12, 2014, the Court applies the version of 20 C.F.R. § 404.1504, as well as any other regulations, in effect at the time of his filing.

8

afford a 100% disability determination by the VA."). Yet, regardless of the weight afforded, "an ALJ must at least consider a VA's disability decision and explain reasons for the weight [the ALJ] assigns to it." *Joseph v. Comm'r of Soc. Sec.*, 741 F. App'x 306, 310 (6th Cir. 2018) (citing *LaRiccia*, 549 F. App'x at 388).

Here, the ALJ properly considered the VA's disability decision and explained the reasons for the weight assigned to it. The ALJ noted that in its July 13, 2015 decision the VA "provided the following disability rating: migraine tension headaches 30%; herniated disc, lumbar spine 20%; chronic diarrhea 30%; radiculopathy of right lower leg 10% radiculopathy of left lower leg 10%; overall combined rating, 100% (Exhibit 4D)." (Tr. 40, 224-27). The ALJ noted that the VA's disability rating was "another governmental agency's adjudicative finding based on its rules" and, thus, was not a medical opinion that the Commissioner must evaluate under Social Security guidelines, but that it was evidence that the ALJ had to consider along with all of the evidence in the record. (Tr. 40). The ALJ gave little weight to the VA rating, explaining that as previously found by the ALJ the overall medical evidence supported the ALJ's RFC determination; that the VA uses a more deferential standard for evaluating the credibility of subjective complaints than the SSA; and that the "VA disability rating relies on a consideration of the effects of a disease or injury on a hypothetical average person's ability to earn income without consideration of a specific veteran's age, education, or work experience," whereas the "SSA provides an individualized assessment that focuses on a claimant's ability to perform work in the national economy." (Tr. 40).

The ALJ noted that Plaintiff complained of mental impairments but that no mental impairments were listed in the VA Disability Rating. (Tr. 40). In the earlier VA disability rating decision on January 29, 2013, the VA assigned Plaintiff a 100% service connected disability rating

9

for his PTSD. (Tr. 131-134). Plaintiff argues that the July 2015 VA rating decision did not disturb the original VA rating decision regarding Plaintiff's PTSD. However, in the VA's July 2015 disability rating, the VA stated that the evidence it considered in making its decision included, among other things, the "[r]ating decision dated January 29, 2013 and all the evidence cited therein[.]" (Tr. 229-30). The January 29, 2013 disability rating decision provided, "Since there is a likelihood of improvement, the assigned evaluation is not considered permanent and is subject to a future review examination." (Tr. 132). The July 2015 disability rating decision stated that Plaintiff was entitled to an award of benefits and that effective December 1, 2014, Plaintiff was entitled to the monthly amount of $3,362, which matched the amount that Plaintiff testified at the ALJ hearing that he was receiving. (Tr. 224, 54-55). As the July 2015 disability rating decision ostensibly incorporated the January 2013 disability rating decision and the ALJ considered the July 2015 disability rating decision, the Magistrate Judge concludes that the ALJ properly considered the VA's disability decision and explained the weight assigned to it.[3]

### 2. The ALJ erred in evaluating Plaintiff's credibility.

Plaintiff asserts that the ALJ's reference to Plaintiff only working at substantial gainful activity levels from 2008-2010 for the last 15 years demonstrates that the ALJ failed to evaluate properly Plaintiff's credibility in a realistic manner when deciding Plaintiff's disability claim, as

---

[3]In support of his argument that the second VA rating decision did not disturb the original VA rating decision about Plaintiff's PTSD, Plaintiff cites that Lisa Pullen, a VA provider, noted in March 2015 that Plaintiff's PTSD was a service connected 100% disability. (Tr. 823-25). However, the cited pages do not reflect such a notation. The March 2015 treatment note reflects diagnoses of major depressive disorder and insomnia and notes a history of PTSD, as well as a history of alcohol and cocaine abuse. (Tr. 825). A February 27, 2015, treatment note by VA provider Lee Weise does note that Plaintiff's PTSD was rated 100% service connected. (Tr. 827). However, this note predates the July 2015 disability rating decision. Plaintiff does not cite to any record showing that Plaintiff maintained the January 2013 disability rating, following the VA's July 2015 rating decision.

10

Case 2:18-cv-00026 Document 14 Filed 05/01/19 Page 10 of 16 PageID #: 976

Plaintiff was only 27 at the time of the hearing and that upon graduation from high school in June 2007 Plaintiff enlisted in the military and served in Iraq from October 2008 until August 2009, and thus, had no time prior to his military service to develop a work history. (Docket Entry No. 12, at 15 (citing tr. 39, 236, 244, 302)). Plaintiff also asserts that the ALJ improperly "referred to the Plaintiff's descriptions of his back pain and gastrointestinal problems as not credible because the Plaintiff's initial response to questioning by the ALJ indicated his mental impairments were his most significant impairment and he only referred to his physical impairments upon questioning by his attorney." *Id*. Plaintiff contends that while his PTSD is his most significant problem his physical problems are also real and limiting. *Id*. at 15-16. Plaintiff cites that a lumbar MRI showed right foraminal disc protrusion at L5-S1 causing impingement on the right L5 in the foramen and right S1 nerve root in the lateral recess and an Esophagogastroduodenoscopy ("EGD") test revealed LA grade B reflux esophagitis and gastric mucosal abnormality characterized by erythema, congested duodenal mucosa, and moderately severe reflux esophagitis. *Id*. at 16.

Social Security Ruling 16-3p, effective March 28, 2016, "provides guidance about how [the Social Security Administration] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims." SSR 16-3p, 2016 WL 1119029, at *1 (S.S.A. Mar. 16, 2016); SSR 16-3p, 2016 WL 1237954 (S.S.A. Mar. 24, 2016) (amending the effective date of SSR 16-3p to March 28, 2016).[4] SSR 16-3p, in relevant part, provides:

---

[4] SSR 16-3p superseded SSR 96-7p. SSR 16-3p became effective on March 28, 2016, which was almost five months before the ALJ hearing. *Blain v. Comm'r of Soc. Sec.*, No. 1:17-CV-844, 2018 WL 4178200, at *6 (W.D. Mich. Aug. 15, 2018), *report and recommendation adopted*, No. 1:17-CV-844, 2018 WL 4150170 (W.D. Mich. Aug. 30, 2018) ("SSR 16-3p applies to administrative decisions made on or after March 28, 2016." (citing *Social Security Ruling 16-3p Titles II and XVI: Evaluation of Symptoms in Disability Claims* (reprinted at 2017 WL 5180304, at *1, 13 n.27 (SSA Oct. 25, 2017)).

11

> If an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record, we will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities . . . . In contrast, if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities . . . .

*Id*. at *7. Instead of "focusing on credibility, the new ruling focuses on consistency." *Barncord v. Comm'r of Soc. Sec.*, No. 2:16-CV-389, 2017 WL 2821705, at *8 (S.D. Ohio June 30, 2017). The Sixth Circuit has characterized SSR 16-3p as merely eliminating "'the use of the term credibility . . . to clarify that subjective symptom evaluation is not an examination of an individual's character.'" *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (citation and internal quotation marks omitted); SSR 16-3p, 2016 WL 1119029, at *1 ("[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character.").

"SSR 16-3p instructs ALJs in accordance with the applicable regulations to consider all of the evidence in the record in evaluating the intensity and persistence of symptoms after finding the claimant has a medically determinable impairment . . . ." *Coffey v. Comm'r of Soc. Sec.*, No. 1:16-CV-222-SKL, 2017 WL 3528952, at *8 n.4 (E.D. Tenn. Aug. 16, 2017). As to a plaintiff's subjective symptoms, the regulations require an ALJ to consider certain factors, including: (1) daily activities; (2) location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken; (5) treatment, other than medication, to relieve pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional

limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2016 WL 1119029, at *7 ("In addition to using all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms, we will also use the factors set forth in 20 CFR 404.1529(c)(3) . . . ."); SSR 96-7p, 1996 WL 374186, at *3 ("20 CFR 404.1529(c) . . . describe[s] the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements").[5]

As to Plaintiff's back pain, the ALJ noted that, although Plaintiff alleged back pain, Plaintiff's physical abilities did not show that his back pain totally precluded him from competitive work on a sustained basis. (Tr. 39). In evaluating Plaintiff's allegations of back pain, the ALJ cited the MRI that showed right foraminal disc protrusion, but noted that in June 2013 Plaintiff reported that he did not go to the gym like he once did because of a lack of motivation, not because of back pain. (Tr. 39, 338, 493). The ALJ also noted that, while Plaintiff continued to complain of back pain, Plaintiff had a steady gait and in June 2014 Plaintiff reported throwing lumber in the yard despite complaints of chronic back pain. (Tr. 39, 456, 440, 635). The ALJ further cites that Plaintiff maintained the ability to perform household chores, repairs, and fix meals, which all require some degree of back support; that Plaintiff's treatment was conservative; and that there was no indication that he was a surgical candidate. (Tr. 39, 36, 269-71, 450-51). Additionally, in determining Plaintiff's RFC, the ALJ gave great weight to the opinion of the State agency consultant who noted

---

[5] "Both SSR 16-3p and 96-7p refer to the two-step process . . . and the factors listed in 20 C.F.R § 404.1529(c)." Perry v. *Comm'r of Soc. Sec.*, 2017 WL 4077151, at *7 n.7 (N.D. Ohio, Sept. 14, 2017); *Bijedic v. Berryhill*, No. 15 C 6864, 2017 WL 2404950, at *2 n.2 (N.D. Ill. June 2, 2017) ("[T]he factors to be considered in evaluating symptoms under either SSR 96-7p or SSR 16-3p are the same.").

Plaintiff's spinal impairment as a factor in determining Plaintiff's exertional capacity. (Tr. 40, 100). The ALJ also noted that in Plaintiff's function report and in the third party function report no physical limitations were alleged--only mental ones--and that Plaintiff stated in his function report that he tried to be very active. (Tr. 40, 41, 268-282). The ALJ further noted that at the hearing Plaintiff mainly complained about mental problems, and although he listed his back, tendonitis in shoulders and migraines, he did not go into much detail about them. (Tr. 40, 62-67, 70-71).

As to Plaintiff's epigastric pain, the ALJ cited that physical examinations did not reveal abnormal findings and that Plaintiff did not experience malnutrition, nausea, or dizziness. (Tr. 35, 336, 356). Although the ALJ did not specifically mention the EGD, the examination showed that Plaintiff's stomach was otherwise normal and the physician recommended Plaintiff to take 40mg of Prilosec (omeprazole)[6] once a day. (Tr. 426). An ALJ "is not required to analyze the relevance of each piece of evidence individually. Instead, the regulations state that the decision must contain only 'the findings of facts and the reasons for the decision.'" *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011) (quoting 20 C.F.R. § 404.953); *Loral Def. Sys.-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999). Plaintiff does not cite to any other medical records regarding epigastric pain.

Moreover, the ALJ noted that in Plaintiff's function report Plaintiff did not allege symptoms of irritable bowel syndrome ("IBS") that interfered with his functioning. (Tr. 41). The ALJ further noted that at the hearing, when asked what bothered him and kept him from working, Plaintiff did not mention IBS and that it was only after his representative questioned him about it that Plaintiff

---

[6]"Omeprazole is used to treat certain stomach and esophagus problems (such as acid reflux, ulcers)." https://www.webmd.com/drugs/2/drug-77588/prilosec-otc-oral/details.

addressed it. (Tr. 41, 67). The ALJ considered that Plaintiff testified that he averaged going to the restroom around six times a day and opined that "[w]ith the opportunity to go to the restroom before and after work and on breaks and at lunch, that level of frequency of restroom visits should not interfere with his work functioning." (Tr. 41, 67-69). Plaintiff does not cite to any medical records regarding his IBS.

Lastly, as one of the factors used in evaluating whether Plaintiff's statements regarding the limiting effects of his symptoms were consistent with the objective medical evidence, the ALJ noted, "Additionally, . . . for the last 15 years, [Plaintiff] has only worked at substantial gainful activity levels from 2008-2010 , which signifies a weak employment motivation and in turn weakens his contentions that but for his medically determinable impairments he would be working." (Tr. 39). However, the ALJ stated this as an "additional" factor and not as the sole factor in evaluating the medical record. The ALJ specifically stated that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 39).

"A claimant's testimony may be discounted if it is contradicted by the medical reports and other evidence in the record." *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 804 (6th Cir. 2012); 20 C.F.R. § 404.1529(c). If an ALJ "simply erred in a factual finding," courts "are not to second-guess," "[a]s long as the ALJ cited substantial, legitimate evidence to support his factual conclusions." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012). In weighing the factors in 20 C.F.R. § 404.1529(c)(3), "the Commissioner has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). An ALJ's determination is entitled to great

15

deference. *Ulman*, 693 F.3d at 714 ("As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess: 'If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion.'") (citation omitted).

Here, the ALJ properly considered Plaintiff's subjective complaints in the context of the record as a whole. The Magistrate Judge concludes that the ALJ's assessment of the evidence was based upon substantial evidence in the record and that Plaintiff's contention is without merit.

## IV. CONCLUSION AND RECOMMENDATION

For the reasons explained above, the Magistrate Judge **RECOMMENDS** that Plaintiff's motion for judgment on the administrative record (Docket Entry No. 11) be **DENIED**, and the Commissioner's decision **AFFIRMED**. The parties have fourteen (14) days of being served with a copy of this Report and Recommendation to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this Report and Recommendation within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140, 142, *reh'g denied*, 474 U.S. 111 (1986); *see Alspaugh v. McConnell*, 643 F.3d 162, 166 (6th Cir. 2011).

**ENTERED** this 1st day of May, 2019.

/s/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge

16